## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-

Esteban Perez, on behalf of himself and all
other plaintiffs similarly situated, known and
unknown

      Plaintiff,

v.

Sparky's Consulting & Tactics, LLC, a
Colorado limited liability company, and
Timothy Moore, individually        ***JURY DEMAND***

      Defendant.

---

## **COMPLAINT**

---

NOW COMES Plaintiff, **ESTEBAN PEREZ**, ("Plaintiff" or "named Plaintiff"), on behalf of himself and all other Plaintiffs similarly situated, by and through his attorneys, John W. Billhorn and Samuel D. Engelson of Billhorn Law Firm, and for his Complaint against Defendants, **SPARKY'S CONSULTING & TACTICS, LLC AND TIMOTHY MOORE** (the "Defendants" or "Sparky's"), states as follows:

## I.    NATURE OF ACTION

1.      This action is brought under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq* ("COMPS") and the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.*

## II.    <u>JURISDICTION AND VENUE</u>

2.      Jurisdiction arises under the provisions of the Fair Labor Standards Act, 29 U.S.C.

§§ 206-207, and for the supplemental Colorado statutory claims, pursuant to 28 U.S.C. §1367.

3.      Venue lies in the District of Colorado in that during all times relevant to the

employment relationship, Plaintiff performed work in this district and is a resident of this district

and Defendants were or are engaged in business in this District.

## III.    <u>THE PARTIES</u>

4.      Defendant, SPARKY'S CONSULTING & TACTICS, LLC (hereinafter referred to as

"Sparky's") is a Colorado limited liability company that owns and operates a private armed

security service. Sparky's provides private security services for private events, security consulting

and other related services for both commercial and residential customers. Sparky's also provides

self-defense training courses.[1]

5.      Sparky's primary business address is 4665 Paris St Suite A-110 Denver, CO 80239

6.      Sparky's  is an "enterprise" engaged in commerce or in the production of goods for

commerce within the meaning of Section 29 U.S.C. §203(s)(1)(A)(i) and based upon information

and belief formed after reasonably inquiry, satisfies the minimum annual gross sales dollar amount

required by 29 U.S.C. §203(s)(1)(A)(ii).

7.      Sparky's ordered, used and handled goods and materials and other products which

moved in interstate commerce prior to being used or purchased in Colorado.

8.      During all relevant times, Sparky's was acting directly or indirectly in the interest

of the employer in relation to the employee Plaintiff and therefore, as defined under both the

---

[1] https://www.Sparky'sstactical.com/services-3

2

federal and state statutes relied upon, is an "employer."

9.    Sparky's, through their owner (Timtohy Moore) and executives, oversaw all operations of Sparky's, including business strategy and daily operations, sales and customer acquisition, personnel decisions, regulatory compliance (including firearm compliance) and was responsible for assigning tasks, creating and distributing schedules, staff supervision, wage policies and otherwise oversaw all aspects of Sparky's business operations and interactions.

10.    Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Sparky's. Sparky's in turn responded to those communications with the authority described herein.

11.    Defendant **TIMOTHY MOORE** (hereinafter referred to individually as "Peixoto") is the founder and owner of Sparky's. Moore resides and/or conducts business related to Sparky's at 1480 Hoyt St, Suite 120, Denver, Colorado.

12.    Moore oversaw all operations of Sparky's, including business strategy and daily operations, sales/customer acquisition, marketing, staffing, compliance, budgeting, and was responsible for related executive functions.

13.    Moore was also responsible for assigning tasks, setting strategies and benchmarks, revenue quotas and other minute details, business operations and customer and stakeholder relations of Sparky's.

14.    In his capacity as founder and owner of Sparky's, Moore was vested with the authority to carry out the wage and hour policies of Sparky's.

15.    Plaintiff was directed to, and did, communicate all employment issues, including the wage and hour violations asserted herein, to Moore and Moore in turn responded to those

communications with the authority described herein.

16.    Thus, at all times relevant hereto Moore was acting directly or indirectly in the interest of the employer in relation to the employee Plaintiff and therefore as defined under both the federal and state statutes relied upon, is an "employer".

17.    Plaintiff, **ESTEBAN PEREZ,** is a former employee of Defendant. Plaintiff worked for Sparky's from approximately December 2022 to June 2023.

18.    Plaintiff was compensated as both an hourly and salaried employee over his tenure with Sparky's.

19.    Plaintiff was initially hired as an armed security guard before being transitioned to a salary-exempt "Director of Compliance" ("DOC")position in approximately January 2023.

20.    While employed as DOC, Plaintiff was paid a set salary, which served as compensation for all hours worked each week, including those over 40 in individual work weeks.

21.    As a salaried employee, Plaintiff did not receive overtime premiums of one and one-half times his regular rate of pay for hours worked over 40 in individual work weeks.

22.    As DOC, Plaintiff did not exercise independent discretion or judgment on matters of significance, perform a primary duty related to management the enterprise (Sparky's), manage a customarily recognized department or subdivision of Sparky's, manage two (2) or more full time employees, direct Sparky's overall, or departmental, strategic business operations, possess individual authority or sufficient weight regarding hiring/firing/performance of other Sparky's employees, or perform primarily non-manual office duties.

23.    During Plaintiff's employment with Sparky's, Plaintiff spent significant amounts of working time performing non-exempt security duties, such as serving as an hourly armed

security guard, completing routine data entry and paperwork, and reporting other routine matters to the Director of Operations.

24.     Plaintiff's work hours spent working armed security with other hourly employees was required by Sparky's. Plaintiff was required to complete a certain number of billable hours as a security guard per week. Upon information and belief, Sparky's assigned mandatory armed guard hours to Plaintiff in order to recover sufficient billable hour revenue from clients to "offset" the cost of Plaintiff's salary and earn billable guard hours (even though the DOC job did not generate such revenues) while not paying Plaintiff additional wages for armed guard work.

25.     Plaintiff participated and engaged in essential job duties and tasks on a daily or weekly basis that directly related and contributed to Sparky's primary business of providing armed guard services to customers for profit.

26.     These tasks performed by Plaintiff:

    a)     were not primarily office or non-manual;

    b)     were not directly related to management or general business operations of Sparky's;

    c)     did not include the primary duty of discretion and independent judgment on matters of significance;

    d)     did not require or involve management of two (2) or more full-time employees;

    e)     did not involve management of the enterprise or of a customarily recognized department or subdivision;

    f)     did not involve authority to hire or fire other employees, suggestions and

recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees;

g)       required Plaintiff to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

27.       As such, Plaintiff was misclassified as a salary-exempt employee. Sparky's should have at all times compensated Plaintiff as an hourly employee entitled to overtime premiums for hours worked over 40 in individual work weeks.

28.       Additionally, the claims of the Named Plaintiff, and the Plaintiff Class, are nearly identical in that regardless of which "manager" or "director" position worked, Sparky's required "directors" and "managers" to perform non-exempt armed guard work each week and did not otherwise cede any bonafide control or authority to said directors and managers. These directors and managers were hired on  to perform sufficiently similar identical job duties, job objectives, job responsibilities and had near-identical job qualifications (including experience and education), language skills, manual labor capabilities and were subjected to the same general working conditions.

29.       The "director" positions implemented by Sparky's were developed, drafted, approved and disseminated by Sparky's owner(s) in line with Sparky's corporate directives and policies.

30.       As a result of the common policies described above, the Named Plaintiff and members of the Plaintiff Class were improperly classified as salary exempt and denied overtime pay for work in excess of 40 hours in a work week.

31.    Throughout all times pertinent to Plaintiff's claims herein, Sparky's applied a common policy as to Plaintiff and "director" or "manager" employees at their Colorado business, in that Sparky's failed to compensate employees all earned overtime wages by implementing allegedly improper salary exemption(s).

32.    Additionally, throughout all times pertinent to Plaintiff's claims herein, Sparky's applied common policies, developed by Sparky's executive(s) and owner(s), that were embedded in its management policies and procedures relative to Plaintiff and other employees.

33.    As a result of the common policies described above, Plaintiff and members of the Plaintiff Class were improperly denied overtime pay for work in excess of 40 hours in a work week.

34.    Common questions of law exist among the claims of Plaintiff and members of the Plaintiff Class in that each claims rests upon a challenge of Sparky's claimed pay practices, exception(s) or exemption(s) to federal and state wage laws.

35.    All other unnamed Plaintiffs, known and unknown ("members of the Plaintiff Class", "Plaintiff Class" or "similarly situated Plaintiffs"), are past or present salaried "director" or "manager" employees who were misclassified as exempt and paid on a salary basis without overtime premiums for hours worked in excess of 40 in a workweek as described herein.

36.    As an employee(s) performing duties for an enterprise engaged in commerce, the named Plaintiff and all members of the Plaintiff Class were also engaged in commerce as defined by the FLSA.

IV.    **STATUTORY VIOLATIONS**

**Collective Action Under the Fair Labor Standards Act**

37.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), Count I of this action is brought by Plaintiff as an opt-in representative or collective action, on behalf of himself and other Plaintiffs similarly situated who have been damaged by Defendants' failure to comply with 29 U.S.C. §201 *et seq*., to recover unpaid overtime wages and additional damages. Count II alleges a willful violation of the FLSA and seeks an additional third year of limitations. Count III seeks liquidated damages under the Fair Labor Standards Act, Section 260.

**Colorado Overtime and Minimum Pay Standards Order, #38**

38.    Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*., Count IV of this action is brought by Plaintiff to recover unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count IV. The claims asserted by Plaintiff herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

39.    Pursuant to the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*., Count V of this action is brought by Plaintiff to recover illegal uniform and special apparel practices implemented by Sparky's on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count V. The claims asserted by Plaintiff herein under COMPS are proper for certification under Federal Rule of Civil Procedure 23.

**Colorado Wage Act**

40.     Pursuant to the Colorado Wage Act, §8-4-101, *et seq*., C.R.S., Count VI of this action is Plaintiff to recover earned, vested and determinable unpaid overtime wages earned on or before the date three (3) years prior to the filing of this action. Each and every Plaintiff who joins this case in the future shall specifically adopt and assert the claims made under this Count VI. The claims asserted by Plaintiff herein under the CWA are proper for certification under Federal Rule of Civil Procedure 23.

## V.    <u>FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS</u>

41.     Plaintiff, at all times pertinent to the cause of action, was employed by Sparky's and Timothy Moore.

42.     Plaintiff's employment as both an armed guard and DOC were integral and indispensable to Sparky's business, as without the work performed by Plaintiff within each of those roles, Sparky's would be unable to run their security business properly or competently or in a way that carried out the business objectives of Sparky's.

43.     Plaintiff was hired by Sparky's in approximately December 2022.

44.     Plaintiff was initially hired as an armed security guard and was paid by the hour.

45.     As a security guard, Plaintiff performed general sales duties, including selling cell phone data plans, devices and accessories to customers.

46.     As a security guard, Plaintiff was classified as an hourly, non-exempt employee and was paid approximately $25.00 per hour. When Plaintiff worked more than 40 hours in a week as a non-exempt security guard, Plaintiff received approximately $33.65 per hour.

47. As a security guard, Plaintiff worked a mandatory minimum of 50 hours per week, which was a condition of his employment imposed by Sparky's.

48.     In approximately July 1, 2022, Plaintiff was transitioned to DOC.

49.     As DOC, Plaintiff worked a mandatory minimum of 50 hours per week, which was a condition of his employment per the offer letter provided to Plaintiff by Sparky's.

50.     Upon Plaintiff's transition to DOC, Plaintiff still performed many of the same duties he did as a security guard, including working regular mandatory shifts as a non-exempt security guard at client sites.

51.     Sparky's required Plaintiff to be on call for shifts outside of any agreed days off. Plaintiff was also required to work security guard shifts on Saturdays. This was specifically stated in Plaintiff's offer letter furnished to him by Sparky's.

52.     As DOC Plaintiff was classified as exempt and received an annual salary of approximately $70,000 paid every two weeks.

53.     Plaintiff was compensated by salary based on a schedule of 100 hours per pay period. Sparky's used a generic "80" hour placeholder in the "Hours" column of Plaintiff's paystubs, even though Plaintiff was working substantially more hours each week.

54.     Plaintiff always worked in excess of the 80 hour "placeholder" Sparky's inserted onto his paystubs, because Sparky's imposed a mandatory minimum schedule of 50 hours per week.

55.     Plaintiff did not clock in and out for his shifts, as he was not required to due to the purported exemption claimed by Sparky's. However, all of Plaintiff's paystubs reflected the 80 hour placeholder even though he regularly worked more than 80 hours each two-week pay period,

as required of the DOC position.

56.     Plaintiff's DOC duties were primarily secretarial in nature, and included completing paperwork, data entry, providing hourly security guards with general communications and instructions from Sparky's and Moore, tracking security guard attendance and reporting no-shows or tardies to Moore. At most, Plaintiff acted as a messenger between Sparky's/Moore and the rank-and-file hourly security guards.

57.     Plaintiff did not possess any specific regulatory/compliance training, education or certification.

58.     As DOC, Plaintiff did not possess any bonafide responsibility regarding any regulatory or legal compliance concerning Sparky's. Plaintiff did not conduct regulatory or compliance training, complete any substantive preparation, presentation or contribution regarding Sparky's compliance measures or applications for permits/licenses, etc. Plaintiff only completed municipal/state online forms related to permits and licenses that did not require specific regulatory/compliance training, experience, certification or specialty.

59.     Plaintiff did not possess any confidential or related business information necessary to perform substantive tasks related to permit/licensing for Sparky's business.

60.     Plaintiff was not responsible for providing annual reports or other information to state regulators or compliance agencies on behalf of Sparky's. Plaintiff did not substantively communicate or meet with any relevant municipal, state or federal regulatory or compliance authority regarding Sparky's business, including firearm possession/use. Plaintiff did not act as Sparky's authorized agent or representative concerning Sparky's regulatory and compliance obligations with relevant local, state or federal authorities. Sparky's substantive and bonafide

compliance and regulatory obligations were handled by Moore.

61.     As DOC, Plaintiff was unable to, and did not, provide significant input on personnel decisions, including hiring, firing, discipline and compensation related to hourly employees, or any other employees based on performance. Sparky's owner, Timothy Moore and Sparky's Director of Operations, chose all employee candidates and made the final hiring decisions of new employees.

62.     All discipline and other personnel decisions related to other employees were handled by Moore and the company's Director of Operations.

63.     As DOC, Plaintiff did not directly manage any other employees, including hourly security guards. The security guards, as well as hourly office employees and mid-level "managers" and "directors" (like Plaintiff) were managed by Timothy Moore.

64.     Any decisions that Plaintiff wanted to make were presented to Moore for consideration and ultimate approval. Oftentimes, Moore amended or completely rejected Plaintiff's input regarding specific decisions.

65.     During Plaintiff's tenure as DOC, Plaintiff did not originate, develop, create or participate in the development of any specific security or compliance training programs or materials. Plaintiff did not contribute any original or unique work product related to any facet of Sparky's business operations, including regulatory or other compliance matters.

66.     In approximately June 2023, Plaintiff was terminated by Sparky's.

67.     While working for Sparky's as DOC, Plaintiff was denied overtime premiums.

68.     While Plaintiff worked as a salaried employee, his day-to-day job duties were:

        a)      not primarily office or non-manual;

b)      not directly related to management or general business operations of Sparky's;

c)      did not include the primary duty of discretion and independent judgment on matters of significance;

d)      did not require or involve management of two (2) or more full-time employees;

e)      did not involve management of the enterprise or of a customarily recognized department or subdivision of Sparky's, including any bonafide "compliance" or "regulatory" department;

f)      did not involve authority to hire or fire other employees, provide suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees;

g)      required Plaintiff to work in excess of 40 hours per week without receiving time and one-half compensation for those hours in excess of 40 in a workweek.

69.      Plaintiff regularly worked in excess of 40 hours each week because Sparky's implemented a minimum hour requirement for Plaintiff to meet each month, such that substantial work hours were required each week to satisfy this job condition.

70.      Plaintiff was instructed to use Sparky's template paperwork, forms, computer systems, training techniques, and instructions and not deviate from them. Plaintiff had no authority to unilaterally alter or otherwise suggest changes to Sparky's template corporate processes, materials and instructions.

71.     Plaintiff was required and expected to use Sparky's corporate processes, materials and techniques at all times, including when performing both "DOC" or "security guard" work. Sparky's provided corporate materials to Plaintiff. Plaintiff had no authority or discretion to create, or change said materials.

72.     Plaintiff was at all times expected to diligently follow and adhere to corporate outlines and procedures imposed by Sparky's. Plaintiff was advised by Sparky's corporate management employees that he was not permitted to deviate from corporate techniques and processes.

73.     Plaintiff had no authority over pricing or costs of services offered by Sparky's. The pricing of all services offered by Sparky's was dictated by Moore.

74.     Plaintiff did not directly supervise two (2) or more full-time employees and did not have any direct reports. Plaintiffs did not have any true management responsibility over any hourly employees, including security guards, as Sparky's (including Moore) set schedules, pay, and managed performance.

75.     Plaintiff performed substantial non-exempt work including manual labor work (including non-exempt security guard services). Plaintiff also performed general data entry tasks and paperwork.

76.     Plaintiff's job was a product of Sparky's myriad common policies and uniform procedures developed and implemented by Sparky's corporate office and Moore.

77.     Plaintiff and all other "directors" and "managers" were employed under identical or substantially similar terms. All "directors" and "managers" were provided identical or substantially similar copies of a position descriptions at the start of their employments.

78.    The common terms of employment for "directors" and "managers", including salary compensation for all hours worked, mandatory hour minimums, required armed security guard shifts, etc., were intentionally and purposefully made identical by Sparky's.

79.    The uniform and common practices and policies implemented by Sparky's, including the job duties and compensation structure, applied to all "directors" and "managers", including Plaintiff. These uniform and common practices and policies as to these alleged "director" and "manager" positions were vital for Sparky's to successfully operate for profit.

80.    Due to the uniform and common policies and practices implemented by Sparky's most, if not all, of the "director" and "manager" job duties as described were pre-determined by Sparky's.

81.    Sparky's, through Moore and other executive employees, exercised extensive control over the job duties and day-to-day assignments, duties and tasks undertaken by Plaintiff and "directors" and "managers".

82.    Plaintiff's job duties and tasks were highly regulated and controlled, sometimes on a step-by-step and incremental level, by Sparky's, such that Plaintiff and members of the Plaintiff Class were prohibited from exercising discretion and independent judgment as to matters of significance within Sparky's operations.

83.    As "directors" and "managers", Plaintiff was directed by Sparky's to strictly adhere to corporate policies and manuals, template forms, scripts, letters and documents, computer programs, and related items that were implemented by Sparky's.

84.    Because Plaintiff and members of the Plaintiff Class were required to adhere to Sparky's uniform policies and guidelines, they were unable to exercise discretion and independent

judgment as to the "director" and "manager" duties outlined by Sparky's in position descriptions.

85.     Sparky's directly controlled most, if not all, aspects of the day-to-day "director" and "manager" duties of Plaintiff and members of the Plaintiff Class, through both common and uniform corporate policies and other verbal or written instructions by Sparky's executive based on said policies.

86.     This level of control exerted by Sparky's afforded no opportunity for Plaintiff and members of the Plaintiff Class to exercise the degree of discretion and independent judgment necessary to satisfy the administrative, executive exemption or any other purported salary exemption.

87.     Most tasks performed by Plaintiff and members of the Plaintiff Class required the review and approval of Sparky's and Moore, who would review Plaintiff's work in conjunction with Sparky's uniform corporate procedures and guidelines, such that Plaintiff and members of the Plaintiff Class were not permitted to independently make decisions regarding the majority of the aspects of their day-to-day job duties.

88.     Plaintiff and members of the Plaintiff Class were evaluated by Sparky's owners and executive employees on a regular basis. Plaintiffs and all "directors" and "managers" were evaluated using identical, universal and common job performance evaluations developed by Sparky's.

89.     As a result of Sparky's overbearing, extensive and minute involvement and control over the day-to-day duties of Plaintiff and members of the Plaintiff Class and the affirmative lack of any supervisory responsibility, "directors" and "managers" did not qualify for the administrative exemption, executive exemption, or any other salary exemptions and should have been paid by the

hour, including overtime premiums for hours worked in excess of 40 in individual work weeks.

90.    Plaintiff was misclassified by Sparky's as a salary-exempt "director" employee.

91.    At all times during Plaintiff's employment, he should have been classified as a non-exempt hourly employee and paid overtime premiums for all hours worked over 40 in individual work weeks.

92.    As part of Plaintiff's employment with Sparky's, he was required to wear specific and special apparel in the form of police-like, protective and tactical equipment as a condition of employment at Sparky's.

93.    Per the conditions of employment stated Paragraph 11 in the offer letter drafted by Sparky's, Plaintiff was required to obtain at his own cost the following items necessary to work for Sparky's:

  a)    Two sets of handcuffs;

  b)    A universal handcuff key;

  c)    Flashlight;

  d)    Pepper spray;

  e)    Baton;

  f)    Firearm (Glock or Springfield specific handgun);

  g)    Plate carrier;

  h)    Bullet proof vest;

  i)    Heavy duty and detective style tactical/protective gear

94.    If Plaintiff did not purchase these items, he could not work for Sparky's as otherwise offered to him.

95.    Plaintiff incurred costs exceeding $2,000 to purchase all special apparel required for employment at Sparky's.

96.    COMPS requires employers to cover the costs of all purchases, maintenance, and cleaning of uniforms and other special apparel.

97.    The apparel and equipment listed in Paragraph 93 consisted of special apparel as defined by COMPS and are not listed among the specific exemptions to 7 C.C.R. 1103-1-6.3.

98.    The apparel purchase requirements imposed by Sparky's were in violation of COMPS.

99.    Upon information and belief, including Plaintiff's personal knowledge about Sparky's operations and workplace policies, all other employees in Colorado, both hourly and exempt, were required to purchase and wear identical special apparel required by Sparky's.

100.    Plaintiff and members of the Plaintiff Class worked or work in excess of forty (40) hours in a workweek without pay for hours worked over forty (40) at a rate of time and one-half their regular hourly rate of pay and were subjected to improper practices as to required uniforms and special apparel, pursuant to the requirements of the federal and state statutes herein relied upon.

101.    Sparky's has, both in the past and presently, willfully employed Plaintiffs and members of the Plaintiff Class as without pay at a rate of one and one-half times their rates of pay for hours worked in excess of 40 in a workweek and required employees to pay for mandatory special apparel.

102.    The total number of hours worked by Plaintiffs and members of the Plaintiff Class, and therefore the total number of overtime hours for which additional compensation is owed, is information substantially, if not completely, within the control and possession of Sparky's, in that

Sparky's recorded or should have recorded such hours pursuant to the record keeping requirements found Title 29 CFR, Part 516. To the extent Sparky's lacks the records required by 29 CFR Part 516, Plaintiffs and members of the Plaintiff Class will be capable of providing reasonable estimates of that time, as permitted by law.

103. The non-compliant practices as alleged herein are common to Plaintiff and all other members of the Plaintiff Class.

104. During their entire employment with Sparky's, Plaintiff, and members of the Plaintiff Class, were paid on a every other week. Plaintiffs, and members of the Plaintiff Class, were only paid their regular salary for all hours worked, including hours in excess of 40 hours in a single work week.

105. Upon information and belief, Plaintiffs understood that other "director" and "manager" employees at Sparky's were paid in the same or similar fashion as described above and were also denied overtime premiums for hours worked in excess of 40 in individual work weeks as a result of Sparky's improper salary classification.

106. Plaintiffs, and members of the Plaintiff Class on a regular basis worked in excess of forty (40) hours in a workweek without pay at a rate of time and one-half their hourly rates of pay for such hours pursuant to the requirements of the federal and state law.

107. Plaintiff and members of the Plaintiff Class were not exempt from the overtime provisions of the FLSA or COMPS, or the wage deduction provisions of COMPS. Likewise, Plaintiff and members of the Plaintiff Class were entitled to the wage protections afforded by the CWA, which applies to timely payment of earned overtime wages. As such, Plaintiffs and similarly situated employees were and are entitled to overtime premiums of time and one-half their hourly

rates of pay for hours worked over 40 in individual work weeks.

108.    The claims brought herein by the Named Plaintiff are based on non-compliant practices and policies implemented by Sparky's and are identical or similar to the claims of other past and present employees who were subject to the same non-compliant policies and practices alleged herein. Those past and present employees are entitled to receive Notice of these proceedings and afforded opportunity to join their individual claims.

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

1-108.  Paragraphs 1 through 108 are re-alleged and incorporated as though set forth fully herein as paragraphs 1 through 108 of this Count I.

109.    Plaintiff, and members of the Plaintiff Class, were each an "employee" pursuant to 29 U.S.C. §203(e).

110.    Defendant was an "employer" pursuant to 29 U.S.C. §203(d).

111.    Plaintiff, and members of the Plaintiff Class, were not exempt from the maximum hours provisions of 29 U.S.C. §207.

112.    Pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, the named Plaintiff, and all other Plaintiffs similarly situated, known and unknown, are entitled to compensation for all hours worked and compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) in any week during the two (2) years preceding the filing of this action.

113.    Defendants have at all times relevant hereto failed and refused to pay compensation to employees, including the Named Plaintiff herein and all other Plaintiffs similarly situated,

known and unknown as described above.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid overtime compensation for the two (2) years preceding the filing of this Complaint, according to the applicable statute of limitations;

(b)    prejudgment interest with respect to the total amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendants' violations of the Fair Labor Standards Act; and

(d)    such additional relief as the Court deems appropriate under the circumstances.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR LABOR STANDARDS ACT

1-113.  Paragraphs 1 through 113 of Count I are realleged and incorporated as though set forth fully herein as Paragraphs 1 through 113 of Count II.

114.    Sparky's actions as complained above were done with Sparky's knowledge that the compensation policies and practices at issue were in violation of the statutes alleged, or with a reckless disregard for whether the policies and practices were in violation of those statutes.

115.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Sparky's, Sparky's possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as stated.

116.    Pursuant to the Fair Labor Standards Act, Plaintiff and all other employees similarly situated, past or present, are entitled to compensation at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40), in the three (3) years preceding the filing of this complaint.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for one (1) additional year, totaling three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendant's violation of the Fair Labor Standards Act; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT III

**LIQUIDATED DAMAGES
UNDER THE FAIR LABOR STANDARDS ACT**

1-116.  Paragraphs 1 through 116 of Count II are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 116 of Count III.

117.    In denying Plaintiff and members of the Plaintiff Class compensation as described above, Defendants' acts were not based upon good faith or reasonable grounds.

118.    Through legal counsel as well as industry experience and custom, and the extraordinary resources available to Sparky's, Sparky's possessed ample access to the regulations and statutory provisions relating to the municipal, state and federal laws recited herein, but either failed to seek out such information and guidance or did seek out the information and guidance but

failed to adhere to the principles of compliance as stated.

119.    The Named Plaintiff and all other past and present employees similarly situated, known and unknown, are entitled to liquidated damages equal to the amount of all unpaid compensation, pursuant to 29 U.S.C. §260.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    liquidated damages equal to the amount of all unpaid compensation;

(b)    Plaintiff's reasonable attorneys' fees and costs incurred as a result of Defendant's violation of the Fair Labor Standards Act; and

(c)    such additional relief the Court deems appropriate under the circumstances.

## COUNT IV

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO OVERTIME
### AND MINIMUM PAY STANDARDS ORDER, #38

### OVERTIME WAGES

1-119.    Paragraphs 1 through 119 of Count III are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 119 of this Count IV.

120.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1 *et seq*.

121.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the minimum or overtime wage provisions of COMPS 7 CCR 1103-3.1, 4.1.

122.    Defendants were each an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

123.    Under COMPS 7 CCR 1103-4.1, for all weeks during which Plaintiff and members of the Plaintiff Class worked more than forty (40) hours, they were entitled to be compensated at a rate of one and one-half times their regular hourly rates of pay.

124.    Defendants' failure and refusal to pay overtime wages for hours worked in excess of 40 per week was a violation of the maximum hour provisions of COMPS 7 CCR 1103-4.1.

125.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of overtime wages due an employee under the law shall be liable to the underpaid employee or employees for the unpaid balance of the full amount of overtime wages due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendant's violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT V

**SUPPLEMENTAL STATE LAW CLAIM
VIOLATION OF THE COLORADO OVERTIME
AND MINIMUM PAY STANDARDS ORDER, #38**

**FAILURE TO PAY EMPLOYEE COST OF SPECIAL APPAREL**

1-125.  Paragraphs 1 through 125 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 125 of this Count V.

126.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Minimum and Pay Standards Order #38, 7 CCR 1103-1-6.3.

127.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under COMPS 7 CCR 1103-1.5(A) and were not exempt from the uniform and special apparel provisions of COMPS 7 CCR 1103-6.3.

128.    Defendants were each an "employer" as defined by COMPS 7 CCR 1103-1.6(A).

129.    Under COMPS 7 CCR 1103-6.3, where wearing particular special apparel as a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel.[2]

130.    Sparky's requirement that Plaintiff and other employees incur the substantial costs of the special apparel and equipment described in Paragraph 93 was in further violation of COMPS, specifically COMPS 7 CCR 1103-6.3.

131.    COMPS 7 CCR 1103-8.1(A) provides that an employer who fails to pay the required amount of compensation due an employee under the law shall be liable to the underpaid

---

[2] Except in two limited circumstances as provided by statute, which do not apply here.

25

employee or employees for the unpaid balance of the full amount of unpaid compensation due and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, respectfully request this Court to enter an order awarding:

(a)    back pay equal to the amount of all unpaid compensation, in the form of illegal wage deductions, for the three (3) years preceding the filing of this Complaint;

(b)    prejudgment interest with respect to the amount of unpaid overtime compensation;

(c)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendant's violation of the Colorado Overtime and Minimum Payment Standards Order, #38; and

(d)    such additional relief the Court deems appropriate under the circumstances.

## COUNT VI

### SUPPLEMENTAL STATE LAW CLAIM
### VIOLATION OF THE COLORADO WAGE ACT

1-131.    Paragraphs 1 through 131 of Count IV are re-alleged and incorporated as though set forth fully herein as Paragraphs 1 through 131 of this Count VI.

132.    As described in the foregoing paragraphs, Defendants' compensation policies and practices are in violation of the Colorado Wage Act, C.R.S. §8-4-101, *et seq.*

133.    The CWA defines wages as "[a]ll amounts for labor or service performed by employees", regardless of whether "the amount is fixed or ascertained by the standard of time". Wages, as defined by the CWA, are governed by the Act once the amounts are "earned, vested, and determinable". CWA, C.R.S. §8-4-101(14(a)(I)-(III).

134.    Plaintiff, and members of the Plaintiff Class, were each an "employee" under CWA, C.R.S. §8-104-101(5) and were not exempt from the CWA's protections.

135.    Defendants were each an "employer" as defined by CWA, C.R.S. §8-104-101(6) and was not exempt from compliance with the CWA.

136.    Pursuant to CWA, C.R.S. §8-4-101(14)(a)(II)-(III), Plaintiff and members of the Plaintiff Class, who were misclassified as exempt employees, worked hours in excess of 40 in individual work weeks which required pay at time and on-half their regular hourly rates of pay.

137.    Once Plaintiff and members of the Plaintiff Class worked hours over 40 in individual work weeks, they earned overtime compensation, although it was not paid. As such, the overtime premiums for which Plaintiff and members of the Plaintiff Class were not paid were and are "wages" as defined by the CWA, and therefore subject to the requirements of the CWA.

138.    Plaintiff and members of the Plaintiff Class did not receive overtime premiums of one and one-half times their regular rates of pay for hours worked over 40 in individual work weeks.

139.    Pursuant to CWA, C.R.S. §8-4-109(3)(b), if an employer fails to pay an employee their earned, vested and determinable wages as set forth by the CWA within fourteen (14) days of service of a written demand, the employee is entitled to a penalty of a) 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due.

140.    On July 31, 2023, Plaintiff submitted a valid written demand, as defined by C.R.S. §8-4-101(15), to Sparky's by email. Plaintiff provided Sparky's and Moore with a specific and detailed demand for wages, in accordance with the CWA.

141.    Sparky's responded to Plaintiff's email on August 10, 2023, but refused to tender the amount of wages demanded by Plaintiff – instead offering a substantially lesser sum that did not in good faith address Plaintiff's demand.

142.    In addition to Plaintiff's July 31, 2023 email demand, Plaintiff's Complaint herein serves as a valid written demand under the CWA, C.R.S. §8-4-101(15) and -109(3)(a) for unpaid overtime wages and other relief on behalf of himself and members of the Plaintiff Class .

143.    Since Sparky's failed to tender the demanded compensation in the amounts due to Plaintiff and members of the Plaintiff Class within the fourteen (14) day period allotted by the CWA, Plaintiff and members of the Plaintiff Class will be entitled to recover penalties described by to CWA, C.R.S. §8-4-109(3)(b) and (c).

144.    Pursuant to CWA, C.R.S. §8-4-109(3)(c), if the employee can prove that the employer's failure to pay wages due under the Act, each of the penalties set forth under CWA, C.R.S. §8-4-109(3)(b) shall increase by 50%.

145.    Sparky's failure and refusal to pay earned overtime wages, as demanded in writing on July 31, 2023 and herein within the fourteen (14) day period described by the CWA, C.R.S. §8-4-109(3)(a.5), was willful and in bad faith.

146.    Plaintiff and members of the Plaintiff Class are owed all earned, unpaid overtime wages and statutory penalties, including increased penalties for willful violations of the CWA.

147.    Per CWA, C.R.S. §8-4-110, Plaintiff and members of the Plaintiff Class are entitled to attorneys' fees and costs incurred prosecuting claims under the CWA.

WHEREFORE, Plaintiff, on behalf of himself and those similarly situated, known and unknown, respectfully requests this Court to enter an order awarding:

(a)    unpaid, earned and vested overtime wages;

(b)    statutory penalties of 125% of the amount of wages due up to and including $7,500; and b) 50% of the amount for wages due over and above the first $7,500 due;

(c)    additional statutory penalties of 50% on top of the penalties prescribed by CWA, §8-4-109(3)(b) for Sparky's willful violation of the CWA;

(d)    Plaintiff's reasonable attorneys' fees and Court costs incurred as a result of Defendants' violations of the Colorado Wage Act; and

(f)    such additional relief the Court deems appropriate under the circumstances.

Respectfully submitted,

***Electronically Filed 08/14/2023***

/s/ Samuel D. Engelson
Samuel D. Engelson
Colorado Bar No: 57295

John William Billhorn
Attorneys for Plaintiff, and those similarly situated, known and unknown

BILLHORN LAW FIRM
53 W. Jackson Blvd., Suite 1137
Chicago, Illinois 60604
(312)-853-1450

7900 E. Union Ave., Suite 1100
Denver, Colorado 80237
(720)-386-9006