**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Regina M. Rodriguez**

Civil Action No.: 23-cv-02058-RMR-NRN

ESTEBAN PEREZ and FERNANDO RODRIGUEZ, on behalf of themselves and all other plaintiffs similarly situated, known and unknown, and

DEVIN MIRACLE, on behalf of himself and all others similarly situated,

Plaintiffs,

v.

SPARKY'S CONSULTING & TACTICS, LLC, a Colorado limited liability company, and TIMOTHY MOORE, individually,

Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants' Motion for Summary Judgment, ECF No. 72. The matter is fully briefed and is ripe for review. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND[1]

Defendant Sparky's Consulting & Tactics, LLC and its owner, Defendant Timothy Moore (collectively, "Defendants"), operate a private armed security service that formerly employed Plaintiffs Esteban Perez, Fernando Rodriguez, Devin Miracle, and the Opt-In Plaintiffs, Spencer Haswell, Haley Gudjohnsen, David Watson, Yevgeny "Gene" Ilin, and Russell Torbett (collectively, "Plaintiffs"). Plaintiffs allege Defendants improperly classified

---

[1] The Court relies on the parties' summary judgment briefing and appendices. *See* ECF Nos. 72 at 5-22; 73-1; 76 at 3-19, 76-2. Unless otherwise stated, these facts are undisputed.

them as exempt from overtime and assert claims under the Fair Labor Standards Act ("FLSA"), Colorado Overtime and Minimum Pay Standards Order No. 38 ("COMPS"), and Colorado Wage Act ("CWA"). They seek unpaid overtime, related damages and penalties, and reimbursement for required uniforms and equipment.

On August 14, 2023, Mr. Perez commenced this action on behalf of himself and other similarly situated plaintiffs. ECF No. 1. He filed an amended complaint adding Mr. Rodriguez as a plaintiff on August 23, 2023. ECF No. 8. The Court granted conditional certification of an FLSA collective (ECF No. 30), and five additional employees—Mr. Haswell, Ms. Gudjohnsen, Mr. Watson, Mr. Ilin, and Mr. Torbett—joined as Opt-In Plaintiffs. ECF Nos. 9, 28, 37, 45, 46. Mr. Miracle filed a separate action asserting substantially similar claims in April 2024, and the Court consolidated the two actions on August 20, 2024. ECF No. 48.

Plaintiffs were each hired by Defendants as non-exempt employees before moving into new positions that Defendants classified as exempt: Mr. Perez as Director of Compliance; Mr. Rodriguez as Director of Operations; Mr. Haswell as Field Manager; Ms. Gudjohnsen as Director of Sales; Mr. Watson as Director of Training; and Mr. Miracle, Mr. Ilin, and Mr. Torbett as Field Supervisors. Although the parties agree on Plaintiffs' job titles, they dispute the duties Plaintiffs actually performed and the extent of their supervisory and decision-making authority.

Defendants move for summary judgment, arguing that Plaintiffs' duties qualified them for the executive and/or administrative exemptions from overtime and that the required security equipment does not constitute reimbursable special apparel under

Colorado law[2]. Alternatively, Defendants seek summary judgment on willfulness and Plaintiffs' entitlement to liquidated damages. Plaintiffs oppose the motion, contending they continued to perform substantial field work, lacked meaningful supervisory and decision-making authority, and purchased required uniforms and equipment at their own expense.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence

---

[2] Although Defendants ask the Court to dismiss the Amended Complaint in its entirety, ECF No. 72 at 38, they offer no argument directed to Count VI, Plaintiffs' claim under the CWA. That claim seeks the same unpaid overtime at issue in Counts I and IV, together with statutory penalties. ECF No. 8 ¶¶ 166-81. Because Defendants have not adequately developed an argument as to this claim, the Court need not address it. *See, e.g.*, *United States v. Rodriguez*, No. 19–cv–1082–WJM, 2020 WL 525717, at *4 n.2 (D. Colo. Feb. 3, 2020) ("The Court need not address arguments not raised or inadequately developed.") (citation modified); *Saleem v. Bondi*, No. 23-9568, 2025 WL 1767817, at *1 (10th Cir. June 26, 2025) ("We do not consider inadequately developed arguments.") (citation modified). And to the extent Defendants' request rests on their exemption arguments, it fails for the reasons discussed herein.

for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

When the moving party bears the burden of persuasion at trial, "the moving party must establish, as a matter of law, all essential elements of the [claim on which summary judgment is sought] before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). In other words, the moving party "must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict." *Rodell v. Objective Interface Sys., Inc.*, No. 14-CV-01667-MSK-MJW, 2015 WL 5728770, at *3 (D. Colo. Sept. 30, 2015) (citing *Celotex Corp.*, 477 U.S. at 331). "The burden then shifts to the non-moving party to produce evidence demonstrating the existence of a genuine factual issue for trial." *Id.*

## III. ANALYSIS

### A. FLSA Overtime

Defendants first seek summary judgment on Count I, Plaintiffs' claim for unpaid overtime under the FLSA, arguing that Plaintiffs were properly classified as exempt employees. The FLSA provides that nonexempt employees must be paid overtime (i.e., one and one-half times their regular hourly rate) for any work over forty hours per week. *See* 29 U.S.C. § 207(a)(1). The Act provides for several exemptions from this requirement, including what are known collectively as the white-collar exemptions. As relevant here, the white-collar exemptions apply to employees engaged in administrative, professional, or executive capacities. *See* 29 U.S.C. § 213(a)(1). As the employer, Defendants bear the burden of proving that Plaintiffs are exempt from FLSA coverage. *See Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008); *Kelley v. Unisys Corp.*, No. 19-CV-03237-PAB-MEH, 2021 WL 1192932, at *6 (D. Colo. Mar. 29, 2021). "[A]ny gaps in the evidence work in plaintiffs' favor." *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 829 (10th Cir. 2012).

Defendants contend that all Plaintiffs[3] are exempt from the overtime requirement under the administrative exemption, and that Plaintiffs Perez, Rodriguez, Watson,

---

[3] Defendants state "Plaintiff Gudjohnsen is ineligible for overtime because her work falls squarely within the professional exemption." ECF No. 72 at 22. The Motion, however, contains no argument or analysis concerning the professional exemption's applicability to Ms. Gudjohnsen. Instead, Defendants argue that Ms. Gudjohnsen's work falls within the administrative exemption. ECF No. 72 at 29-31. Accordingly, the Court construes the Motion as asserting the administrative exemption and analyzes it on that basis. To the extent Defendants also seek summary judgment under the professional exemption, their failure to develop any supporting argument precludes them from carrying their burden, and the Motion is denied on that ground. *See Archuleta*, 543 F.3d at 1233 (explaining that the employer bears the burden of proving that employees are exempt from FLSA coverage).

Haswell, Ilin, Torbett and Miracle are also exempt from the overtime requirement under the executive exemption. As explained below, genuine disputes of material fact concerning Plaintiffs' primary duties preclude summary judgment under either exemption.

1. Administrative Exemption

The administrative exemption applies to any employee employed in a bona fide administrative capacity. *See* 29 U.S.C. § 213(a)(1). An "administrative employee" is any employee:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands by employers other than the Federal government, or $380 per week if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

The parties agree that the salary threshold is met. Thus, the question before the Court is whether Defendants have shown that the primary duty requirements are met. To answer that question, the Court "must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA's protections." *Maestas*, 664 F.3d at 827.

“The term ‘primary duty’ means the principal, main, major or most important duty that the employee performs.” 29 C.F.R. § 541.700(a). Factors to consider when determining an employee’s primary duty include the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee’s relative freedom from direct supervision; and the relationship between the employee’s salary and the wages paid to other employees for the kind of nonexempt work performed by the employee. 29 C.F.R. § 541.700(a). “Time spent performing each duty is a ‘useful guide’ in examining which duty is primary, but there is no requirement that an exempt executive employee spend more than half her time on managerial tasks.” *Maestas*, 664 F.3d at 827 (quoting 29 C.F.R. § 541.700(b)). “Because the primary duty determination is a factual one, summary judgment is appropriate only if all reasonable factfinders would conclude that the managerial portions of plaintiffs’ jobs are their ‘primary duties.’” *Id.* at 829; *see also Dep’t of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994) (“A fact-sensitive inquiry is necessary” to determine which duty is primary); *Ward v. Park Ave. Exploration Corp.*, No. 94–6157, 1994 WL 708187, at *2 (10th Cir. Dec. 21, 1994) (unpublished) (“By its very terms, the ‘primary duty’ analysis is fact driven.”).

As previously noted, to qualify for the administrative exemption, an employee’s primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer’s customers. Such work includes “work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research;

safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption." 29 C.F.R. § 541.201(b).

Defendants contend each Plaintiff had primary duties which were directly related to management or general business operations, pointing to Plaintiffs' job descriptions and deposition testimony as evidence of their management duties. *See* ECF No. 72 at 30-31. Plaintiffs dispute Defendants' characterization of many of the duties they performed and argue that their primary duty was non-exempt field work as armed guards. *See* ECF No. 76 at 19-20.

The record reflects genuine disputes on nearly every consideration relevant to the primary duty inquiry. These include how much of Plaintiffs' time was spent performing non-exempt guard work, the relative importance of that work to Defendants' business, the nature of the alleged exempt work Plaintiffs performed, and the degree to which Plaintiffs were free from direct supervision. Thus, summary judgment is improper on this basis.

a. *Time Spent Performing Non-Exempt Work and Its Relative Importance*

Although the time spent on exempt versus non-exempt work is not dispositive, Defendants' Motion does not address the fact that Plaintiffs, after their promotions, continued to work shifts in the field as armed security guards. *See* ECF No. 76 at 19. Such work is not work "directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a). To the extent Plaintiffs spent substantial time working

in the field as guards, that time weighs against a finding that their primary duty was administrative. And the record contains substantial evidence that Plaintiffs did so. Plaintiff Perez testified that he "worked as a guard a lot of times" and that "a lot of my hours were in a service role, not in a managerial role." ECF No. 76-2 at 14. Plaintiff Watson testified that "at the beginning of 2023, [he] would be required to cover shifts in addition to the classes [he] was teaching," and that Defendant Moore expected him to work field hours and "was very large on, we have to work enough billable hours to cover our salary." *Id.* at 100-101. Plaintiff Torbett testified that as a Field Supervisor his "main role was . . . to work shifts that were call-outs, or to do a lot of site checks." *Id.* at 360. He also described his job as "covering shifts when anybody called out. That was my main job description. Just to cover shifts." *Id.* at 354. Plaintiff Haswell testified that he worked guard shifts as a Field Supervisor. *Id.* at 59. He also testified that, although he was promised the Field Manager role would keep him out of the field, that promise "quickly changed" and was renegotiated to two field days per week. *Id.* Plaintiff Miracle testified that he worked sites while serving as manager on duty and came in on days off to cover shifts "because there wasn't [sic] guards on sites." *Id.* at 46. Plaintiff Rodriguez testified that duty hours were "billable hours or hours outside of the office, anything that was presumed to be on shift, working, anything outside of the office that you were assigned to." *Id.* And in text messages, Defendant Sparky's Director of Human Resources, Ashleigh Lovett, stated that Plaintiff Gudjohnsen "works 3 days in the field." *Id.* at 407.

Moreover, Plaintiffs' offer letters and job descriptions reflect the expectation that Plaintiffs would continue working in the field. *See, e.g.*, ECF No. 73-1 at 322, 498, 704,

719, 1018 (offer letters Plaintiffs Miracle, Haswell, Watson, Ilin, and Torbett each state that the position "will include both fieldwork and office work as dictated by the business needs of the company."); *id.* at 500 (Field Manager job description states "[w]e expect you to work up to 30 hours of fieldwork per pay period."); *id.* at 707-08 (Director of Training job description allocates field days that "include covering scheduled or last minute shifts in the field."). Viewed in the light most favorable to Plaintiffs, this evidence creates a genuine dispute as to how much time Plaintiffs spent performing non-exempt guard work and the relative importance of that work compared to any administrative work they performed. *See Maestas*, 664 F.3d at 830 (holding that, "given [plaintiff's] approximately equal division of time between his field lieutenant and [office] duties, there remain genuine questions about which of his duties are primary" and therefore summary judgment on the administrative exemption was improper).

*b. Nature of the Work Performed*

Even setting aside the dispute over how much time Plaintiffs spent performing non-exempt field work, Plaintiffs have raised a genuine factual dispute as to whether the work they performed in office was "directly related to the management or general business operations" of Defendants. Defendants rely principally on Plaintiffs' written job descriptions as evidence of that work. *See* ECF No. 72 at 30-31. But exempt status turns on the duties an employee actually performs, not on a job title. *See* 29 C.F.R. § 541.2 ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this

part.”). And Plaintiffs have offered evidence that their job descriptions do not reflect the work they actually performed. For example, when asked how he carried out his job description’s directive to ensure that company policies complied with state law, Plaintiff Perez testified that Defendant Moore “told [him] that that was something that he made sure he did because he couldn’t trust anybody else to do that job.” ECF No. 76-2 at 11. The other Plaintiffs similarly testified that they did not perform many of the duties listed in their job descriptions. *See, e.g., id.* at 19-20 (Plaintiff Rodriguez testifying that he asked Defendant Moore to remove language from his job description stating that he would train and coach employees in the field because “that wasn’t my job. . . . I wasn’t involved in field monitoring, or training, or operations”); *id.* at 22 (Plaintiff Rodriguez testifying that he did not write the company’s SOPs, which “all had to go through approval to [Defendant Moore]”); *id.* at 24 (Plaintiff Rodriguez testifying that he objected to approximately ten of the fifteen essential duties listed in his job description); *id.* at 62 (Plaintiff Haswell testifying that, despite his title, “I did not have the ability to actually hire people. I did not have the ability to actually fire people. . . . I was not managing anybody in any way because I was not providing them performance evaluations . . . . I was just a messenger for [Defendant Moore] and Ashleigh”); *id.* at 94 (Plaintiff Watson testifying that he taught curriculum material that Defendant Moore “handed me at the beginning of the assignment and said, this is what I want you to teach”); *id.* at 354 (Plaintiff Torbett testifying that he “never got a job description” as a field supervisor and that covering shifts when guards called out “was my main job description”). Thus, a reasonable factfinder could conclude that the work Plaintiffs actually performed was not administrative.

*c. Freedom from Direct Supervision*

The parties also dispute the degree to which Plaintiffs worked free from direct supervision. Plaintiffs testified that Defendant Moore directed nearly every aspect of their work. *See* ECF No. 76-2 at 22 (Plaintiff Rodriguez testifying that “nothing in the company goes without [Defendant Moore] knowing or [Defendant Moore]’s approval.”); *id.* at 356 (Plaintiff Torbett testifying that “everything we were told to do or asked to do was all asked by [Defendant] Moore.”); *id.* at 285 (Plaintiff Haswell describing organizational chain of command as one that existed “on paper” while “everything had to go through” Defendant Moore); ECF No. 73-1 at 74-75 (Ms. Lovett testifying that she required Plaintiff Gudjohnsen to run her marketing materials past her “for approval”). While Defendants have provided some evidence of greater autonomy, such as testimony from Ms. Lovett that Field Supervisors could adjust guard pay rates to fill shifts up to a certain amount, *Id.* at 730, this conflicting evidence presents a factual question that cannot be resolved at summary judgment.

On this record, a reasonable factfinder could conclude that each Plaintiff’s primary duty was not administrative. Because “all reasonable factfinders” would not necessarily conclude otherwise, *Maestas*, 664 F.3d at 829, Defendants are not entitled to summary judgment on the administrative exemption. These same disputes bear directly on whether Plaintiffs’ primary duty “include[d] the exercise of discretion and independent judgment with respect to matters of significance,” 29 C.F.R. § 541.200(a)(3), and thus the Court does not separately resolve the third prong.

2. Executive Exemption

Defendants also argue the executive exemption applies to Plaintiffs Perez, Rodriguez, Watson, Haswell, Ilin, Torbett and Miracle. That exemption applies to "any employee employed in a bona fide executive . . . capacity." 29 U.S.C. § 213(a)(1). An "executive employee" is one who is:

> (1) Compensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). As with the administrative exemption, Plaintiffs do not contest that the salary threshold is met, but dispute that the remaining requirements are met. Here too, genuine factual disputes preclude summary judgment.

*a. Primary Duty*

The same disputes that preclude summary judgment on the administrative exemption preclude a finding that Plaintiffs' primary duty was management. As discussed above, the record contains conflicting evidence about the amount of time Plaintiffs spent working as armed guards, the relative importance of that work, the extent to which Plaintiffs' written job descriptions reflected their actual duties, and the degree to which

Plaintiffs worked free from direct supervision. Each of those considerations bears equally on whether management was Plaintiffs' "principal, main, major or most important duty." 29 C.F.R. § 541.700(a); *see Maestas*, 664 F.3d at 829.

*b. Customarily and Regularly Directs the Work of Two or More Other Employees*

The record also contains conflicting evidence as to whether Plaintiffs customarily and regularly directed the work of two or more employees. Defendants rely primarily on an undated organizational chart, ECF No. 73-1 at 1023, and the affidavit of Ryan Wilson, who attests that as Field Supervisor, he reported to Plaintiff Perez and then Plaintiff Rodriguez, *id.* at 5-6. Plaintiffs, however, testified to the contrary. Plaintiff Watson testified that the organizational chart is "not accurate at all." ECF No. 76-2 at 95. Plaintiff Rodriguez testified that "no one directly reported to me" and all field supervisors reported to Defendant Moore. *Id.* at 21-22, 27-28. And Plaintiff Perez testified that he never reported to Plaintiff Rodriguez and his interaction with other employees was limited to passing on Defendant Moore's messages. *Id.* at 9-10, 15. Defendants' own evidence is inconsistent on this point, as Defendant Sparky's HR Director, Ms. Lovett, could not identify a single employee who reported to Plaintiff Ilin, Plaintiff Haswell, or Plaintiff Torbett, testifying only that there were "too many" to provide specific names. ECF No. 73-1 at 507. And Defendant Moore testified that the compliance department Plaintiff Perez purportedly managed consisted of "just him," which raises a further question as to whether Mr. Perez managed a "customarily recognized department or subdivision" at all. ECF No. 76-2 at 107; *see* 29 C.F.R. § 541.103.

*c. Authority to Hire and Fire*

The parties also dispute whether Plaintiffs had the authority to hire or fire, or whether their recommendations were given "particular weight." *See* 29 C.F.R. § 541.100(a)(4). In determining

> whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105. Defendants point to disciplinary forms identifying various Plaintiffs' involvement in disciplining employees, interview forms, and testimony that Plaintiffs sat in on hiring interviews and that Plaintiff Rodriguez terminated at least one employee. *See* ECF No. 72 at 27-28. However, participation in personnel matters, standing alone, does not establish that an employee's recommendations receive particular weight. In *Meats v. Ridley's Fam. Markets, Inc.*, the plaintiffs undisputedly sat in on interviews and evaluations and made recommendations concerning raises and promotions. No. 22-CV-01070-PAB-KAS, 2024 WL 1141525, at *13 (D. Colo. Mar. 15, 2024). But the employer offered no evidence as to how frequently it requested or relied upon those recommendations, or that the recommendations pertained to employees whom the

plaintiffs customarily and regularly directed. *Id.* That gap, combined with the plaintiffs' evidence that they were infrequently involved in personnel decisions or attended personnel meetings merely as witnesses, led the court to conclude that "there is a genuine dispute of fact regarding whether the plaintiffs' recommendations were given 'particular weight.'" *Id.* at *14; *see also* *Reyes v. Snowcap Creamery, Inc.*, No. 11-cv-02755-WJM-KMT, 2013 WL 4229835, at *5 (D. Colo. Aug. 14, 2013) (finding a genuine dispute where plaintiff provided only minimal input on some personnel decisions and was not consulted at all on others).

The Court finds the facts here similar to those in *Meats*. Despite evidence of some involvement by some Plaintiffs in hiring and firing activities, Plaintiffs offer substantial evidence calling into question the extent of that involvement and the weight their input received. Plaintiff Perez testified that, when he raised concerns about another employee's misconduct, Defendant Moore told him discipline was "not [his] role" and to "know [his] place." ECF No. 76-2 at 12-13. Plaintiff Rodriguez testified that "everything had to be approved through [Defendant Moore] and [Ms. Lovett]," that he was "more of . . . the deliverer," and that only one of his three termination recommendations, which was made jointly with Ms. Lovett, was approved. *Id.* at 34-37. Plaintiff Watson testified that terminating employees for safety violations "wasn't something that I had any authority over" and that he saw little action taken on his recommendations. *Id.* at 87-88. And Plaintiff Haswell testified that his input on prospective hires "mattered none" and that he "was just a messenger for [Defendant Moore] and Ashleigh." *Id.* at 57-58, 62.

The Field Supervisors described similar limits. Plaintiff Ilin testified that he had no hiring or firing responsibilities and that Defendant Moore "made all of those decisions." *Id.* at 373-74. Plaintiff Torbett testified that supervisors "were not allowed to hire anybody or fire anybody" and could sit in on such discussions without having any "say in it." *Id.* at 363-64. And Plaintiff Miracle testified that he could send a guard home for the day, but that Defendant Moore and Ms. Lovett determined whether the guard remained employed. *Id.* at 42. Defendant Moore's own testimony corroborates this, as he retracted his testimony that Plaintiffs had the authority to hire and fire other individuals, clarifying that "[t]hey had the authority to give feedback or recommendation of hiring or firing of individuals." *Id.* at 103. Thus, as in *Meats*, Defendants offer little evidence of how frequently Plaintiffs' recommendations were requested or relied upon.

Accordingly, viewed in the light most favorable to Plaintiffs, there remain factual disputes as to whether the executive exemption applies to Plaintiffs Perez, Rodriguez, Watson, Haswell, Ilin, Torbett, and Miracle. Defendants' Motion is therefore denied as to Count I.

**B. FLSA Willfulness and Liquidated Damages**

Defendants also move for summary judgment on Count II, which alleges that Defendants willfully violated the FLSA. ECF No. 72 at 36-37. In passing, and without specifically referencing Count III, Defendants also ask that the Court find Plaintiffs are not entitled to liquidated damages. *Id.* at 37.

At the outset, the Court notes that Defendants' argument conflates two distinct inquiries that bear on two distinct claims. Whether Defendants acted willfully determines

the relevant statute of limitations that applies to Count II. *See* 29 U.S.C. § 255(a). Whether Defendants acted in good faith determines whether the Court may, in its discretion, reduce or deny liquidated damages under Count III. *See* 29 U.S.C. § 260. The two inquiries are governed by different standards and place the burden of proof on different parties. Defendants nonetheless blend the two, arguing that they did not act willfully because they acted in good faith, and that Plaintiffs are not entitled to liquidated damages as a result. ECF No. 72 at 37. The Court addresses each inquiry in turn.

1. Willfulness

The FLSA "imposes a two-year statute of limitations unless the defendant's violations are shown to be willful, in which case a three-year period applies." *Mumby v. Pure Energy Servs. (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011) (citing 29 U.S.C. § 255(a)). To establish a willful violation, Plaintiffs must prove that Defendants "either knew or showed reckless disregard for the matter of whether [their] conduct violated the statute." *Mumby*, 636 F.3d at 1270 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (noting that, although the FLSA's statute of limitations is an affirmative defense, the plaintiff has "the burden of persuasion on the willfulness issue"). A plaintiff can establish "reckless disregard" through "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Mumby*, 636 F.3d at 1270 (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)).

Defendants argue they did not act willfully because they relied on advice of legal counsel in making the decision to classify their management team as exempt and to deny

Plaintiffs' demand for overtime pay. ECF No. 72 at 36-37. For support, Defendants rely solely on *Gelber v. Akal Security, Inc.* 14 F.4th 1279, 1288 (11th Cir. 2021), which they cite for the proposition that an employer who seeks legal advice acts in good faith. But *Gelber* addressed the good faith defense to liquidated damages under 29 U.S.C. § 260. *Id.* The question under 29 U.S.C. § 255(a) is not whether Defendants acted in good faith. It is whether Plaintiffs can prove that Defendants knew or showed reckless disregard for the matter of whether their conduct violated the statute. As to that question, there are genuine disputes of material fact.

In support of their argument, Defendants point to Defendant Moore's testimony that he used attorneys to draft his employment policies, Ms. Lovett's testimony that Defendants used their payroll company and attorneys to transition employees from hourly to salaried positions, and a letter from Defendants' counsel to Plaintiff Perez responding to his demand for overtime pay. ECF No. 72 at 36-37. While "consultation with an attorney may help prove that an employer lacked willfulness, such a consultation is, by itself, insufficient to require a finding in favor of the employer." *Mumby*, 636 F.3d at 1270. Moreover, Defendants have not put forth evidence showing that they sought counsel's advice on whether Plaintiffs' positions qualified for an exemption, or that counsel advised them the classification was lawful. *See id.* (employer may assert good faith reliance on counsel provided it shows: "(1) a request for advice of counsel on the legality of a proposed action, (2) full disclosure of the relevant facts to counsel, (3) receipt of advice from counsel that the action to be taken will be legal, and (4) reliance in good faith on counsel's advice.") (quotation and citation omitted).

Plaintiffs, for their part, have offered evidence that Defendants were on notice of potential violations and declined to change their practices. In text messages from May 2023, Plaintiffs Perez and Rodriguez repeatedly raised concerns with Defendant Moore about Plaintiffs' exempt classifications, but nothing changed. ECF No. 76-2 at 252-322. Plaintiff Haswell also testified that when he raised the issue of overtime, Defendant Moore told him, "I'm not going to pay any overtime. You guys don't deserve overtime. You guys are salaried employees." *Id.* at 63. Although this evidence does not establish willfulness as a matter of law, a reasonable factfinder could conclude from it that Defendants knew of, or recklessly disregarded, the possibility that Plaintiffs were misclassified *See Mumby*, 636 F.3d at 1271-72 (holding that employer recklessly disregarded the FLSA where it was "put on notice" of its overtime obligations but "made no real changes to its compensation policy"). Accordingly, Defendants' Motion is denied as to Count II.

2. Liquidated Damages

To the extent Defendants seek summary judgment on Count III, their argument is both underdeveloped and premature. Under the FLSA, liquidated damages are presumptively available. An employer who violates the overtime pay requirement, 29 U.S.C. § 207, "shall be liable to the employee . . . affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). But if an employer in an FLSA action shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages." 29 U.S.C. § 260. The burden

is on the employer to prove "by plain and substantial evidence, subjective good faith and objective reasonableness." *Boyer v. Celerity Sols. Grp., LLC*, 482 F. Supp. 3d 1122, 1134 (D. Colo. 2020).

Defendants' single sentence on the liquidated damages issue does not carry that burden. Regardless, the issue is premature given that the question of Defendants' liability remains for trial. *See Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2023 WL 6929402, at *15 (D. Colo. Oct. 19, 2023) ("[M]ultiple courts have determined that a ruling on the issue of good faith and reasonableness at the summary judgment stage is premature when the underlying claims of violation remain outstanding.") (collecting cases). Accordingly, Defendants' Motion is denied as to Count III.

**C. COMPS Overtime**

Next, Defendants seek summary judgment on Count IV, Plaintiffs' claim for unpaid overtime under COMPS Order No. 38. Defendants argue that "[l]ike the FLSA, the COMPS Order allows overtime exemptions for 'administrative employees' and 'executives or supervisors,'" and that Plaintiffs qualify for those exemptions for substantially the same reasons they qualify under the FLSA. ECF No. 72 at 33-35.

The administrative exemption covers an employee who meets the applicable salary threshold and "who directly serves an executive, and regularly performs duties important to the decision-making process of that executive." 7 C.C.R. § 1103-1:2.2.1. "The executive and employee must regularly exercise independent judgment and discretion in matters of significance, with a primary duty that is non-manual in nature and

directly related to management policies or general business operations." *Id.* The executive or supervisor exemption covers an employee who meets the applicable salary threshold and "who supervises the work of at least two full-time employees and has the authority to hire and fire, or to effectively recommend such action." 7 C.C.R. § 1103-1:2.2.2. "The employee must spend a minimum of 50% of the workweek in duties directly related to supervision." *Id.*

The same fact issues that precluded summary judgment under the FLSA exemptions similarly preclude summary judgment on Plaintiffs' COMPS claim. *See Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2023 WL 6929402, at *13 (D. Colo. Oct. 19, 2023); *Ott v. Chacha in Art LLC*, 506 F. Supp. 3d 1133, 1141 (D. Colo. 2020) (courts are to read exemptions under the FLSA and Colorado law harmoniously). The disputes discussed above regarding Plaintiffs' primary duties, the nature of their office work, the amount of time they spent in the field, and their authority to hire and fire apply with equal force here. Accordingly, Defendants are not entitled to summary judgment on Count IV.

**D. COMPS Special Apparel**

Finally, Defendants seek summary judgment on Count V, which alleges Defendants violated COMPS Order No. 38 by failing to pay for special apparel. Under the COMPS Order, "[w]here wearing a particular uniform or special apparel is a condition of employment, the employer shall pay the cost of purchases, maintenance, and cleaning of the uniforms or special apparel" subject to two exceptions for ordinary, plain, and washable clothing. 7 C.C.R. § 1103-1:6.3.1. Defendants raise three arguments: (1)

Plaintiffs do not specify what they mean by special apparel; (2) the record shows Defendants purchased cargo pants for six of the Plaintiffs; and (3) to the extent Plaintiffs argue Defendants should have purchased safety equipment, COMPS No. 38 does not require Defendants to purchase such equipment. ECF No. 72 at 35-36.

Defendants' first two arguments are unpersuasive. Contrary to Defendants' assertion, Plaintiffs have identified the items at issue. Plaintiffs allege that "they were required to wear specific and special apparel in the form of police-like, protective and tactical equipment as a condition of employment at Sparky's." ECF No. 8 ¶ 126. They go on to list the items they were required to obtain at their own expense: two sets of handcuffs, a universal handcuff key, flashlight, pepper spray, baton, firearm, plate carrier, bullet proof vest, and heavy duty and detective style tactical/protective gear. *Id.* ¶ 127. And the record confirms that Plaintiffs were required to obtain certain equipment before becoming an employee. *See, e.g.*, ECF No. 73-1 at 49-50 (offer letter requiring all gear must be obtained). That Defendants purchased cargo pants for some Plaintiffs does not address the items for which Plaintiffs seek reimbursement.

Defendants' third argument has some merit. Rule 6.3 requires employers to pay for "uniforms or special apparel." 7 C.C.R. § 1103-1:6.3.1. It says nothing about equipment. Plaintiffs dismiss this argument as mere semantics, and argue that "[w]hether items Plaintiffs purchased as a condition of employment with Defendants are considered 'uniforms,' 'equipment,' or 'special apparel' does not matter because Defendants are required to reimburse Plaintiffs for all the above." ECF No. 76 at 33. But words matter, particularly as used in a regulation. Plaintiffs offer no authority for their assertion that Rule

6.3 requires employers to reimburse employees for equipment, and the Court is not persuaded by an argument that asks it to disregard the text of the rule it is applying.

"The Court construes the COMPS Order, an administrative regulation, using the 'same rules of construction that [courts] would apply in interpreting a statute.' " *McAlister v. LGI Homes Corp., LLC*, No. 23-CV-03088-NYW-TPO, 2025 WL 843749, at *9 (D. Colo. Mar. 18, 2025) (quoting *Brunson v. Colo. Cab Co.*, 433 P.3d 93, 96 (Colo. App. 2018)). "If the regulation's language is unambiguous, the Court 'enforce[s] it as written, giving the words and phrases their common and ordinary meaning.' " *Id.* (quoting *Gomez v. JP Trucking, Inc.*, 509 P.3d 429, 436 (Colo. 2022)). In ordinary usage, a "uniform" is defined as "dress of a distinctive design or fashion worn by members of a particular group and serving as a means of identification." *Uniform*, Merriam-Webster, https://www.merriam-webster.com/dictionary/uniform (last visited November 3, 2026). And "apparel" is defined as "personal attire; clothing of a particular kind." *Apparel*, Merriam-Webster, https://www.merriam-webster.com/dictionary/apparel (last visited November 3, 2026). Rule 6.3's surrounding text confirms that reading. The rule addresses the "cleaning" of uniforms and special apparel, and its exceptions address clothing that is "plain and washable" and does not require "ironing, dry cleaning, [or] pressing." 7 C.C.R. § 1103-1:6.3.1(A)-(B).

Given the plain meaning of those terms, several of the items Plaintiffs identify fall outside Rule 6.3 as a matter of law. A firearm, handcuffs, a handcuff key, a baton, pepper spray, and a flashlight are tools and weapons, not uniforms or apparel. The same cannot be said, however, for the protective gear Plaintiffs were required to wear, such as the

plate carrier, bullet proof vest, and heavy duty and detective style tactical/protective gear. These items are worn on the body as a condition of employment, and a reasonable factfinder could conclude that they constitute "special apparel" within the meaning of Rule 6.3. Defendants do not address these items specifically. They argue only that "safety specific equipment" generally falls outside the rule. ECF No. 72 at 36. Because the protective gear is worn, and because the record reflects that Defendants required Plaintiffs to obtain it at their own expense, Defendants have not shown they are entitled to judgment as a matter of law on that portion of the claim. Moreover, the parties dispute which items each Plaintiff was required to purchase and which items each Plaintiff in fact purchased. *See* ECF No. 76 at 33.

Accordingly, Defendants' motion is granted in part as to Count V. Defendants are entitled to summary judgment to the extent Count V seeks reimbursement for firearms, handcuffs, handcuff keys, batons, pepper spray, and flashlights. The motion is denied as to the remainder of Count V.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion for Summary Judgment, ECF No. 72 is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Count V, to the extent it seeks reimbursement for firearms, handcuffs, handcuff keys, batons, pepper spray, and flashlights. The Motion is DENIED in all other respects. The parties are ORDERED to jointly contact chambers via email within thirty (30) days from the date of this Order to obtain a trial date for a five-day trial and a date for a trial preparation conference.

DATED: November 19, 2026

BY THE COURT:

REGINA M. RODRIGUEZ
Chief Judge, U.S. District Court